IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 06-00209-01 DAE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| HERBERT NAONE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER DENYING DEFENDANT HERBERT NAONE'S
MOTION FOR RELEASE PENDING APPEAL

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for

disposition without a hearing.  After reviewing Defendant's motion, the Court

DENIES Defendant's Motion for Release Pending Appeal (Doc. # 99).

BACKGROUND

This Court repeats the background facts only as is necessary for a

decision on Defendant's Motion for Release Pending Appeal (Doc. # 99) in the

discussion section below.

On April 13, 2006, a federal grand jury returned a one-count

indictment charging Defendant, along with co-defendant James Rodenhurst, with

conspiracy to extort under color of official right, in violation of 18 U.S.C. § 1951.

(Doc. # 1.)  Defendant originally entered a plea of not guilty.  (Doc. # 6.)

However, on September 27, 2006, Defendant withdrew his not guilty plea and pled

guilty pursuant to a Memorandum of Plea Agreement ("MPA," Doc. # 24) before

Magistrate Judge Barry M. Kurren.  (Doc. # 22.)  In accordance with the

Magistrate Judge's Report and Recommendations (Doc. # 23), this Court formally

accepted Defendant's guilty plea and adjudicated him guilty on October 16, 2006.

(Doc. # 26.)

On August 17, 2009, Defendant filed a motion to compel the

Government to file a motion for downward departure based upon substantial

assistance.  (Doc. # 75.)  Also, on August 17, 2009, Defendant filed a motion

pursuant to U.S. Sentencing Guidelines Manual ("U.S.S.G." or "Guideline(s)")

§ 5K2.0 for a downward departure based upon the same grounds.  (Doc. # 76.)  On

August 31, 2009, the Government filed a motion for downward departure outlining

its position on the degree of assistance provided by Defendant in the investigation

and prosecution of criminal activity.  (Doc. # 80.)  Although the Government did

not agree that Defendant provided sufficient assistance in the prosecution of

criminal activity, it nevertheless suggested that a below-Guideline sentence of 16

months imprisonment would adequately reward Defendant for the information he

had provided at various times.  (Id. at 6.)  On September 1, 2009, this Court issued

2

an order denying as moot Defendant's motion to compel the Government to file a motion for downward departure based upon substantial assistance.  (Doc. # 81.)

Defendant's presentence investigation report ("PSR") determined that his total offense level was 15 with a Criminal History Category I.  (Doc. # 88.) Defendant's advisory Guideline range for imprisonment was 18 to 24 months. (Id.)

On September 8, 2009, this Court accepted the MPA, granted the Government's motion for downward departure, and sentenced Defendant to 16 months imprisonment.  (Doc. # 87.)  Because this Court granted the Government's motion at Defendant's sentencing, Defendant's own motion was denied as the circumstances allegedly warranting downward departure were formally addressed in sentencing.  (See id.)  This Court also directed Defendant to surrender to the United States Marshal for the District of Hawaii before 2:00 p.m. on January 5, 2010.  (Id.)

On September 17, 2009, Defendant filed a Notice of Appeal with the Ninth Circuit.  (Doc. # 90.)  On October 15, 2009, Defendant filed the instant motion, seeking an order from this Court for a stay of his January 5, 2010 mittimus date pending appeal of his sentence to the Ninth Circuit.  (Doc. # 99.)  On October 27, 2009, Defendant filed a Supplemental Memorandum in Support of Motion for

Release Pending Appeal.  (Doc. # 106.)  On November 2, 2009, the Government filed its Opposition to Defendant's Motion for Release Pending Appeal. (Doc. # 107.)

## DISCUSSION

Defendant argues pursuant to 18 U.S.C. § 3143(b) that his motion for release pending appeal should granted because his appeal is likely to result in: (1) a sentence that does not include a term of imprisonment; or (2) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.  18 U.S.C. § 3143(b)(1)(B)(iii), (iv); (Mot. at 1-2.)  In so arguing, Defendant denies that the MPA waived his right to appeal his sentence.  (Id. at 3.)  This Court will now address Defendant's arguments on the merits.

I.     Defendant's Waiver of Appeal

Defendant argues that: 1) the MPA's language regarding the circumstances under which Defendant may appeal his sentence (the "MPA appeal waiver") is ambiguous; and 2) ambiguity was created through the Government and Magistrate Judge Kurren's paraphrasing of the MPA appeal waiver during Defendant's change of plea hearing.  (Mot. at 4-8; Defendant's Supplemental

4

Memorandum in Support of Motion for Release Pending Appeal "Supp. Mot." at 2-6.)

     A.    <u>The Memorandum of Plea Agreement</u>

     A defendant may waive a statutory right to appeal his sentence. <u>United States v. Navarro-Botello</u>, 912 F.2d 318, 321 (9th Cir. 1990), <u>cert.</u> <u>denied</u>, 503 U.S. 942 (1992).  Plea agreements are generally construed according to the principles of contract law.  <u>See</u> <u>United States v. Johnston</u>, 199 F.3d 1015, 1020 (9th Cir. 1999).  The government is held to the literal terms of the agreement and any ambiguity is construed in favor of the defendant.  <u>See</u> <u>United States v. Franco-Lopez</u>, 312 F.3d 984, 989 (9th Cir. 2002).  If the language of an integrated plea agreement is clear and unambiguous, then a court will not look to extrinsic evidence to determine the plea agreement's meaning.  <u>See</u> <u>United States v. Ajugwo</u>, 82 F.3d 925, 928-29 (9th Cir. 1996).

     In this case, the MPA explicitly outlines Defendant's waiver of his right to appeal and the limited circumstances under which Defendant retains the right to appeal:

    12.    The Defendant is aware that he has the right to appeal the sentence imposed under Title 18, United States Code, Section 3742(a).  Defendant knowingly waives the right to appeal, except as indicated in subparagraph "b" below, any sentence within the maximum provided in the statute(s) of conviction or

the manner in which that sentence was determined on any of the grounds set forth in Section 3742, or on any ground whatever, in exchange for the concessions made by the prosecution in this plea agreement.

a.      The Defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, except that defendant may make such challenge (1) as indicated in subparagraph "b" below, or (2) based on a claim of ineffective assistance of counsel.

b.      If the Court imposes a sentence greater than specified in the  guideline range determined by the Court to be applicable to the Defendant, the Defendant retains the right to appeal the portion of his sentence greater than specified in that guideline range and the manner in which that portion was determined under Section 3742 and to challenge that portion of his sentence in a collateral attack.

(MPA ¶ 12.)

Defendant first argues that the MPA's language regarding the circumstances under which Defendant may appeal are ambiguous when read in context with 18 U.S.C. § 3742(a)(2) and (3).[1]   (Mot. at 6-7; Supp. Mot. at 5.)

_____

[1]Defendant cites U.S. v. Somner, 127 F.3d 405 (5th Cir. 1997) as an example of a plea agreement with an ambiguous waiver of appeal.  The appeal waiver in Somner provided: "[T]he defendant may appeal a sentence: . . . (b) that includes an upward departure from the Sentencing Guidelines, which upward departure had not been requested by the United States Attorneys Office or (c) that includes or is based on a material and unlawful misapplication of the Sentencing Guidelines by the Court."  The Somner Court found the appeal waiver language

6

Defendant specifically argues that the words "a sentence greater than specified in the guideline range" makes it impossible for a person to distinguish "greater than" from "the guideline range."  (Supp. Mot. at 5.)  This statement is apparently, but not clearly, part of an argument that the MPA does not include all of the language of 18 U.S.C. § 3742(a)(2) and (3), but enough of the language as to "call into play" or "implicate" the full language and thereby trigger the title of Section 3742(A), "Appeal by a Defendant," and allow the instant appeal.  (Mot. at 6-7.)  If another argument is made, it cannot be discerned by this Court.

This Court finds no ambiguity in the language "a sentence greater than specified in the guideline range," particularly when taken in context with all of MPA paragraph 12(b).  (See MPA ¶ 12(b).)  The statement clearly anticipates a comparison between the length of sentence imposed by the court and the length of sentence recommended in the applicable Guidelines.  Only if this Court imposed a

_____

was not so much ambiguous as so overly broad that review of the issues of "enhancement or criminal history calculation under the guidelines" could not be foreclosed because those errors could involve a "material and unlawful misapplication of the Sentencing Guidelines."  See id. at 407-08.

As Defendant concedes, the instant case's MPA appeal waiver is not so broadly worded as in Somner.  (Mot. at 6.)  In fact, the appeal waiver language found to be overly broad in Somner is not present at all in Defendant's MPA. Additionally, the Somner Court did not find the appeal waiver language allowing appeal for a sentence that included an upward departure from the Sentencing Guidelines ambiguous or overly broad.  Somner, 127 F.3d at 407.

greater, *i.e.*, longer, sentence than that recommended by the Guidelines would

Defendant retain the right to appeal that portion of his sentence above the

Guidelines' recommendation.  (See id.)

    As for Defendant's statutory argument, as a preliminary matter, this

Court disagrees that the language of the MPA appeal waiver bears any resemblance

to 18 U.S.C. § 3742(a)(2).  Compare (MPA ¶ 12(b) ("determined by the Court to

be applicable to the Defendant[] . . . .")) with 18 U.S.C. § 3742(a)(2) ("was

imposed as a result of an incorrect application of the sentencing guidelines[]").

Further, the presence of allegedly similar statutory language in the MPA does not

trigger any rights available under that statute.  In fact, the appeal waiver clause of

the MPA was written specifically to exclude the normal grounds for appeal

provided for by  18 U.S.C. § 3742(a).[2]  Moreover, 18 U.S.C.

§ 3742(a)(3) would not benefit Defendant as he was not sentenced to a sentence

greater than the sentence specified in the applicable Guideline range.  (See Docs.

## 87, 88.)

---

  [2] MPA paragraph 12 states: "Defendant knowingly waives the right to appeal, except as indicated in subparagraph 'b' below, any sentence within the maximum provided in the statute(s) of conviction or the manner in which that sentence was determined on any of the grounds set forth in Section 3742, or on any ground whatever, in exchange for the concessions made by the prosecution in this plea agreement." (MPA ¶ 12.)

Defendant next argues that the phrases "guideline range" and "total offense level" are so closely related as to be read interchangeably, thereby allowing Defendant an exception to the MPA appeal waiver if this Court imposed a sentence greater than what the sentence would have been under the November 1, 2003 amendment to the U.S.S.G. ("2003 U.S.S.G."). (See Mot. at 7-8.) This Court disagrees. Defendant's argument is very difficult to follow and in the end nonsensical. As stated above, Defendant agreed to the terms of the MPA, which stated explicitly that this Court would determine the Guideline range applicable to the Defendant. Additionally, the terms "guideline range" and "total offense level" are terms of art referencing different elements of sentencing—the latter informing, but not equal to, the former. A defendant's applicable "guideline range" under the U.S.S.G. is determined by looking at both the defendant's total offense level and criminal history category. Moreover, as explained below, Defendant would have received an identical sentence under the November 1, 2003 amendment to the U.S.S.G. See infra note 4.

Defendant next argues that extrinsic facts—in this case the existence of prior U.S.S.G. amendments in effect at the time of Defendant's illegal conduct—surrounding the entry of the MPA should be considered in interpreting the MPA appeal waiver. (Mot. at 9.) Defendant's argument that the 2003 U.S.S.G.

9

should have been applied is addressed further below.  See infra Section.II.C.1.

(See id.)

The language of the MPA appeal waiver, MPA paragraph 12(b), is not ambiguous and this Court will not look to extrinsic evidence to determine terms of the MPA.  The literal terms of the MPA clearly and unambiguously provide that Defendant retains the right to file an appeal only in two very limited circumstances: (1) if the Court imposes a sentence greater than the applicable Guideline range; and (2) in order to raise a claim of ineffective assistance of counsel.  (MPA ¶ 12(b).)  Defendant does not argue either circumstance is applicable here, and because this Court granted the Government's motion for downward departure and sentenced Defendant to 16 months imprisonment (Doc. # 87), a sentence below the Guideline range of 18 to 24 months imprisonment found to be applicable to Defendant (PSR at 15, ¶ 65.), Defendant has no allowable grounds for appeal.  Accordingly, so long as Defendant agreed to the MPA appeal waiver knowingly and voluntarily, Defendant's waiver of his right to appeal is enforceable because the language of the waiver encompasses Defendant's right to appeal on the grounds raised in the instant Motion.

B.     Entry of Plea

An express waiver of the right to appeal is valid only if knowingly and voluntarily made.  See United States v. Baramdyka, 95 F.3d 840, 843 (9th Cir. 1996).  In construing the MPA, this Court must determine what the Defendant reasonably believed to be the terms of the MPA at the time of his plea.  Franco-Lopez, 312 F.3d at 989; see also United States v. De la Fuente, 8 F.3d 1333, 1338 (9th Cir. 1993) (noting that a plea agreement is construed according to what the defendant reasonably understood its terms to be at the time that he pleaded guilty).

Defendant argues that ambiguity was interjected into the MPA appeal waiver through the Government and Magistrate Judge's paraphrasing of the waiver during Defendant's change of plea hearing.  (See Supp. Mot. at 2 (citing U.S. v. Wilken, 498 F.3d 1160, 1168 (10th Cir. 2007) (plea colloquy by court may cause ambiguity in the appeal waiver)).)  The Defendant does not further explain how the court's paraphrasing was misleading to Defendant, or what ambiguity was interjected into the MPA appeal waiver.

During Defendant's change of plea hearing, Defendant affirmed that he was not under the influence of any medications, alcohol or drugs.  (Supp. Mot., Ex. A at 4.)  Defendant affirmed that he understood the purpose of the proceeding and the consequences of pleading guilty.  (Id. at 4-6.)  Defendant also affirmed that

11

he had read the provisions of the MPA carefully and that he had consulted with

counsel.  (Id.)  As part of the hearing, Magistrate Judge Kurren asked then

Assistant United States Attorney, Ms. Nakakuni, to summarize the essential terms

of the MPA.  (Id. at 6.)  In providing such summary, Ms. Nakakuni detailed the

MPA appeal waiver, specifically MPA paragraph 12(b).  (Id.)  Defendant

acknowledged that he understood what Ms. Nakakuni stated and confirmed that her

statement accurately reflected the agreement he had reached with the Government

(Id. at 8.)  Magistrate Judge Kurren then reviewed the MPA appeal waiver with

Defendant and stated:

> COURT:     First on the waiver of appeal.  Ordinarily, you would
> have the right to have a higher court review this case if
> you're not happy with the sentence that is imposed.  You
> are essentially giving up that right however.  There are,
> as [the United States Attorney] said, two limited
> circumstances under which review may be made.  If
> Judge Ezra goes higher than the guideline range you
> could challenge that – that portion of the sentence above
> the guideline range.  If your attorney is ineffective in
> representing you that could be the basis for a challenge.
> But there are very limited circumstances frankly not
> likely to occur.
>
> So what that means for your case is this, if – if Judge
> Ezra stays within the guideline range or below, even if
> you're not happy with the sentence, no appeal. That's –
> that's it. That's the end of the game. You have to live
> with that sentence.  Do you understand that?

DEFENDANT:     Yes, I do.

(Id. at 9).

This Court disagrees with Defendant that the Government or Magistrate Judge Kurren introduced any ambiguity into the MPA appeal waiver. Ms. Nakakuni essentially repeated the language of the MPA waiver verbatim.  (Id. at 6.)  Magistrate Judge Kurren did not repeat the identical language of the MPA waiver, but also did not make any statement contradictory to its terms.  (Id. at 9.) If anything, such repetition would serve to increase the importance of the MPA appeal waiver in Defendant's mind.  Moreover, Defendant affirmed after each summary that he understood the terms of the waiver of appeal.  (Id. at 6, 9.)

The record before this Court shows that the MPA is unambiguous on its face and that Defendant knowingly and voluntarily agreed to its terms. Therefore, pursuant to the terms of the MPA, Defendant waived his right to appeal his conviction and any sentence not above the Guidelines range as determined by this Court.  Accordingly, this Court DENIES Defendant's Motion for Release Pending Appeal.

II.     Release Pending Appeal

In an abundance of caution, and to avoid unnecessary work and effort on the part of the Court of Appeals in the event they disagree with this Court, this

Court will address the Defendant's other arguments regarding release pending

appeal.

Release pending appeal is governed by 18 U.S.C. § 3143(b).  The

Ninth Circuit has explained that, pursuant to 18 U.S.C. 3143(b), a defendant is to

be incarcerated pending appeal unless a court finds that:

> (1) the defendant is not likely to flee or pose a danger to the safety of any other person in the community if released;
>
> (2) the appeal is not for the purpose of delay;
>
> (3) the appeal raises a substantial question of law or fact; and
>
> (4) if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.

United States v. Handy, 761 F.2d 1279, 1283 (9th Cir. 1985) (citations omitted).

Defendant must show by "clear and convincing evidence" that he satisfies all four

factors.  18 U.S.C. § 3143(b).  As explained below, Defendant fails to meet the

burden of proof required for any of the four factors.

A.     Likelihood of Flight or Danger to the Community

Defendant neglects to provide any evidence regarding his risk of flight

or danger to the community.  Moreover, the fact that Defendant's offense was not

violent in nature does not ensure he is not a danger to the community.  See United

States v. Reynolds, 956 F.2d 192, 192-93 (9th Cir. 1992) (danger may encompass pecuniary or economic harm (citing United States v. Provenzano, 605 F.2d 85, 95 (3rd Cir. 1979) (the concept of danger includes the opportunity to exercise a substantial and corrupting influence within a labor union))).  Therefore, Defendant has failed to meet his burden.

      B.    Appeal for the Purpose of Delay

      As stated, Defendant must show that his request for release pending appeal is not for "the purpose of delay." Handy, 761 F.2d at 1283.  Defendant has failed to introduce any evidence to show that his instant Motion is anything other than another attempt at delay in a history of delay tactics by Defendant and his counsel, Christopher Evans.

      Defendant's guilty plea was accepted by this Court on October 16, 2006.  (Doc. # 26.)  Through a series of ten requested continuances (Docs. ## 32, 42, 50, 57, 59, 61, 63, 66, 71, 82), sometimes at the request of the Government based on defense counsel's schedule, but primarily at the request of defense counsel, and nine obtained stipulations (Docs. ## 33, 43, 52, 58, 60, 62, 64, 68, 73), Defendant was not sentenced until September 8, 2009.  (Doc. # 87.)  Further, Defendant has waived his right to appeal.  Substantial delay appears to be the primary motive of Defendant's instant Motion.

C.      Substantial Question of Law or Fact

In Handy, the Ninth Circuit construed the word, "substantial" in 18 U.S.C. § 3143(b) as defining the level of merit required in the question presented and the phrase "likely to result in reversal or an order for a new trial" as defining the type of question that must be presented.  Handy, 761 F.2d at 1280.  The Ninth Circuit further defined a "substantial question" as one that is "fairly debatable," or "fairly doubtful."  Id. at 1283 ("A 'substantial question' is one of more substance than would be necessary to a finding that it was not frivolous."); see also United States v. Montoya, 908 F.2d 450, 451 (9th Cir. 1990).

Defendant states that he will raise the following issues on appeal: (1) the application of the November 1, 2007 version of the Sentencing Guidelines, and not the November 1, 2003 version of the Guidelines, violates the ex post facto clause; (2) the court erred in applying a 4-level increase for an offense involving an official in a high-level decision-making position; and (3) the court erred in failing to make adequate factual findings in imposing its sentence.  (Mot. at 12-13).   For the reasons stated below, Defendant's Motion does not articulate any substantial question of law or fact.

1.     Application of the Sentencing Guidelines

Defendant argues that ex post facto considerations are implicated by this Court's use of the November 1, 2007 amendment to the U.S.S.G.[3]  (Mot. at 12-13.)  Specifically, Defendant states that the dates of offenses committed by Defendant all occurred after April 2004 and before November 2004.  (Id.)  Therefore, Defendant argues that the 2003 U.S.S.G. should have been used in his sentencing because his offenses ceased prior to the November 1, 2004 amendment to the U.S.S.G. ("2004 U.S.S.G.") when allegedly disadvantageous changes were made to U.S.S.G. § 2C1.1.  (Id. at 9, 13.) Defendant claims that if the 2003 U.S.S.G. are used, his offense level would be 11 rather than 15 as reflected in Defendant's PSR.  (Id. at 9.)

When a law has retrospective application which disadvantages the offender affected by it, its application is prohibited by the ex post facto clause. U.S. v. Ortland, 109 F.3d 539, 546 (9th Cir. 1997) (internal citation omitted). Therefore, when application of an amendment of the Guidelines adopted after the offense leads to a higher punishment than would application of the Guidelines in

---

[3] Defendant is incorrect in asserting that this Court used the November 1, 2007 amendment to the U.S.S.G. in his sentencing.  (Mot. at 12-13.)  This Court used the November 1, 2008 amendment of the U.S.S.G. to sentence Defendant. (PSR ¶ (A)(28); Doc. # 87.)

effect at the time of the offense, an ex post facto clause problem is presented.  Id. (internal citation omitted).

The ex post facto clause is only violated if "two critical elements [are] present: first, law must be retrospective, that is, it must apply to events occurring before its enactment; and second, it must disadvantage the offender affected by it."  Miller v. Florida, 482 U.S. 423, 430 (1987) (internal quotation marks and citation omitted).  A law is retrospective if it "changes the legal consequences of acts completed before its effective date."  Id.  (citation omitted).  No ex post facto violation is present "if a change does not alter substantial personal rights, but merely changes modes of procedure which do not affect matters of substance."  Id. (internal quotation marks and citation omitted).

Conspiracy is a continuing offense.  United States v. Castro, 972 F.2d 1107 (9th Cir. 1992).  Where a conspiracy is initiated before a change in the Guidelines, but not concluded until after the date of the change, defendants are subject to enhanced penalties pursuant to the new Guidelines for acts that occurred prior to the change without violation of the ex post facto clause.  United States v. Morales, 11 F.3d 915, 917 (9th Cir. 1993); Castro, 972 F.2d at 1112.  Further, a

conspiracy "is presumed to continue until there is affirmative evidence of abandonment, withdrawal, disavowal or defeat of the object of the conspiracy."  Id.

The PSR in this case noted no ex post facto problems and used the November 1, 2008 version of the U.S.S.G. ("2008 U.S.S.G.")  (PSR ¶ (A)(28).)  Defendant's Indictment and MPA allege that Defendant's part in the extortion conspiracy ran from prior to May 2004 through January 2005.  (Doc. #1 at 3; MPA ¶ 8(b).)   According to the PSR, the Government's wiretap authorization expired at 12:00 a.m. on December 1, 2004.  (PSR ¶ (A)(17)(a).)  Up until then, additional telephone calls between the defendant and codefendant James Rodenhurst continued to be intercepted.  (Doc. # 88.)  Defendant's arrest warrant issued April 13, 2006 (Doc. # 2), and he was arrested April 14, 2006.  (PSR at 1.)  Because conspiracy is a "continuing offense" for Guidelines purposes, and Defendant admitted that his criminal conduct continued past the effective date of the amendment, application of the 2004 U.S.S.G.  was appropriate.

The probation office and this Court applied the November 1, 2008 amendments to the U.S.S.G.  (PSR at 8.)  The PSR noted that there was no difference between application of the Guidelines in effect at the time the offense occurred and the Guidelines in effect at the time of sentencing.  (PSR at ¶ (A)(28).)

19

The Guideline for an 18 U.S.C. § 1951 offense is found in U.S.S.G. § 2C1.1. Both the 2004 and 2008 U.S.S.G. provide a Base Offense Level of 12 for Extortion Under Color of Official Right. Both Guidelines are also identical with regard to the Specific Offense Characteristics applied to Defendant. Compare 2004 U.S.S.G. § 2C1.1(b)(1), (3) with 2008 U.S.S.G. § 2C1.1(b)(1), (3). Defendant does not argue that the downward adjustments applied to his offense level would have varied if he was sentenced pursuant to the 2004 U.S.S.G. Therefore, Defendant's sentencing does not involve an ex post facto problem: (1) the sentence is not retrospective because Defendant was involved with a conspiracy through the November 1, 2004 amendment to the U.S.S.G.;[4] and (2) use of the 2008 U.S.S.G. was not disadvantageous to the Defendant. For the above

---

[4]Further, applying the 2003 U.S.S.G. to Defendant's sentencing would result in an identical total offense level, thereby precluding any ex post facto considerations. Compare 2003 U.S.S.G. § 2C1.1 (1) with 2008 U.S.S.G. § 2C1.1(b)(1), (3). This Court disagrees with the Defendant's contention that the 8-level increase for influencing an elected official or any official holding a high-level decision-making or sensitive position under the 2003 U.S.S.G. would not apply in this case and therefore, the 2003 U.S.S.G. would be more advantageous to him. Defendant's PSR found both adjustments, 2003 U.S.S.G. § 2C1.1(b)(2)(B) (If the offense "involved a payment for the purpose of influencing an elected official or any official in a high-level decision-making or sensitive position") or 2008 U.S.S.G. § 2C1.1(b)(3) (If the offense "involved an elected public official or any public official in a high-level decision-making or sensitive position") would apply in this case. (PSR, Addendum at 3A.) Reviewing that determination, this Court agrees with the Probation Office. See discussion infra Section II.C.2.

reasons, Defendant's argument fails to raise a substantial question of law or fact because the issues raised are not fairly debatable.  See Handy, 761 F.2d at 1283.

### 2.    Application of Special Offense Characteristics

Defendant next argues that the specific offense characteristic of "high level decision-making or sensitive position," U.S.S.G. § 2C1.1(b)(3) is unwarranted because the charge of extortion "under color of official right" accounts for Defendant's supervisory position.  (Mot. at 12.) Defendant also refutes the fact that his position met the requirements of that of a high-level decision-making or sensitive position.  (Id.)

The complained of special offense characteristic under the 2008 U.S.S.G. § 2C1.1(b)(3) states: "If the offense involved an elected public official or any public official in a high-level decision-making or sensitive position, increase by 4 levels."  This special offense characteristic is identical to the one provided by the 2004 U.S.S.G. § 2C1.1(b)(3).  The 2008 U.S.S.G. § 2C1.1, Application Note 4 (identical to the 2004 U.S.S.G. § 2C1.1, Application Note 4 except as is bracketed), provides guidance regarding when to apply the § 2C1.1(b)(3) specific offense characteristic of "high-level decision-making or sensitive position." Application Note 4 states:

(A)   Definition.–"'High-level decision-making or sensitive position"
means a position characterized by a direct authority to make
decisions for, or on behalf of, a governmental [government]
department, agency, or other government entity, or by a
substantial influence over the decision-making process.

(B)   Examples.– Examples of public official in a high-level
decision-making position include a prosecuting attorney, a
judge, an agency administrator, and any other public official
with a similar level of authority.  Examples of a public official
who holds a sensitive position include a juror, a law
enforcement officer, an election official, and any other similarly
situated individual.

Defendant's offense *involved* co-defendant James Rodenhurst, a

Liquor Control Investigator and night shift supervisor at the Honolulu Liquor

Commission.  (MPA ¶ 8(a)(ii).)  As a Liquor Control Investigator, Rodenhurst was

a sworn law enforcement officer and responsible for handing out nightly

assignments to the investigators was also responsible for assigning each team to a

particular geographic area of responsibility for each shift.  (Id.; PSR ¶ (A)(13).)

Rodenhurst used this supervisory authority to allow clubs to operate without a

liquor license and/or beyond the limitations of their liquor license.  (PSR

¶ (A)(13).)  Accordingly, the special offense increase for an offense involving a

public official in a high-level decision-making or sensitive position was warranted

under either the 2004 or the 2008 U.S.S.G.

22

Finally, Defendant pled guilty to Extortion Under Color of Official Right in violation of 18 U.S.C. § 1951, the "Hobbs Act." Anyone who actually exercises official powers, regardless of whether those powers were conferred by election, appointment, or some other method may be charged under the Hobbs Act.  U.S. v. Freeman, 6 F.3d 586, 592 (9th Cir. 1993).  Defendant *himself* was not sentenced a public official as evidenced by Defendant's Base Offense Level of 12 as opposed to a Base Offense Level of 14 "if the defendant was a public official[.]" See 2008 U.S.S.G. § 2C1.1(a)(1)-(2) (identical under the 2004 U.S.S.G.); (PSR ¶ (A)(29).)  For the above reasons, Defendant's argument is not one that is fairly debatable and therefore fails to raise a substantial question of law or fact.

3.      Failure to Make Adequate Factual Findings

Defendant argues that this Court erred in not stating reasons for granting the Government's motion for downward departure, not stating how many levels this Court departed downward in granting the downward departure, and not stating reasons for denying Defendant's separate motion for downward departure.

This Court addressed both the Government and Defendant's motions for downward departure at Defendant's sentencing hearing.  (See Doc.

# 87.)   Although the Government did not agree that Defendant provided sufficient assistance in the prosecution of <u>criminal</u> activity as referred to in U.S.S.G. § 5K1.1, the Government nevertheless suggested that a below-Guideline sentence of 16 months imprisonment would adequately reward Defendant for the information he had provided at various times.  (Doc. # 80 at 6.)  In granting the Government's motion for downward departure, this Court adopted the Government's evaluation of the extent of Defendant's assistance and varied its sentence accordingly.  (Doc. # 87.)  The recommendation in the Government's motion was for a decrease in time served, not for a decrease in total offense level. Such a choice is within the Government's discretion to recommend and this Court's discretion to accept or deny.  By recommending a sentence of 16 months, the Government, by definition, recommended a downward departure of one level, allowing for a guideline range of 15 to 21 months.  <u>See</u> 2008 U.S.S.G., sentencing table (Criminal History Category I, Offense Level 15 compared to Offense Level 14).

Defendant stated that his motion was for a downward departure from the guideline range (not from Defendant's total offense level) and was "independent without a government motion."  (Doc. # 76.)  The Government subsequently filed its motion for downward departure.  (Doc. # 80.)  Defendant did

not state in his motion for downward departure on which guideline in U.S.S.G. §

5K2.0 he was relying, but based his motion on the fact that Defendant "offered

information or [took] action of some benefit to the government that could not (sic)

be used to prosecute others."  (See Doc. # 76.)  Because the Government's motion

for downward departure based upon Defendant's assistance was granted,

Defendant's own motion to compel a downward departure based upon the same

assistance, or lack there of, was denied by this Court.  For the above reasons,

Defendant's argument is without merit and therefore fails to raise a substantial

question of law or fact.  Accordingly, Defendant has not raised a single issue of

substance warranting release pending appeal.

      D.   <u>Likelihood of Reversal or New Trial</u>

      "'The term 'substantial' defines the level of merit required in the

question presented, and the phrase 'likely to result in reversal [or] an order for a

new trial' defines the type of question that must be presented."  <u>Montoya</u>, 908 F.2d

at 450 (internal citation omitted).  This order need not even address the

"likelihood" prong if the issues are deemed insubstantial.  <u>Handy</u>, 761 F.2d at

1283.  As stated above, this Court finds that no substantial issues are presented by

Defendant.  Because there is no question of substantial law or fact, this Court need

not address whether a favorable decision for Defendant would result in a new

sentence involving no imprisonment.  Accordingly, this Court DENIES

Defendant's Motion for Release Pending Appeal.

CONCLUSION

The Court DENIES Defendant's Motion for Release Pending Appeal.

Pursuant to the terms of the September 27, 2006 Memorandum of Plea

Agreement, Defendant waived his right to appeal his conviction and any sentence

within the Guidelines range.  In addition, Defendant cannot satisfy the statutory

requirements of 18 U.S.C. § 3143 for obtaining release pending appeal.

Accordingly, Defendant is ordered to report on January 5, 2010, before 2:00 p.m.

in accordance with the designation received by Defendant from the U.S. Pretrial

Services Office.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 25, 2009.



_____
David Alan Ezra
United States District Judge

United States v. Herbert Naone, Cr. No. 06-00209-02 DAE; ORDER DENYING
DEFENDANT HERBERT NAONE'S MOTION FOR RELEASE PENDING
APPEAL